UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| PETER MALS,<br>    Plaintiff, | :<br>:<br>: |
| v. | :     No. 3:19-cv-01770 (VLB) |
| SMITH & NEPHEW, INC.<br>    Defendant. | :<br>:<br>:     June 17, 2020<br>: |

MEMORANDUM OF DECISION
GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS, [ECF NO. 14]

On November 11, 2019, Plaintiff Peter Mals, a resident of Old Saybrook, Connecticut, brought the instant complaint under Conn. Gen. Stat. §§ 52-572(m), 52-572(g), and 52-572(h), alleging that defective knee replacement parts made by Defendant Smith & Nephew, Inc. ("Defendant") caused him bodily harm following knee replacement surgery. [ECF No. 1 (Compl.)].

On December 20, 2019, Defendant filed a motion to dismiss Plaintiff's Complaint for failure to adequately plead claims pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure. [ECF No. 14]. Defendant claimed that Plaintiff's Complaint failed to plausibly state a claim for which relief can be granted pursuant to *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), in that the allegations in the Complaint were not sufficiently detailed. *Id.*

On January 10, 2020, Plaintiff filed a motion to amend the Complaint to add more detail therein, [ECF No. 16], and simultaneously filed an opposition to Defendant's Motion to Dismiss.  [ECF Nos. 17, 18].

On January 14, 2020, the Court granted Plaintiff's timely motion to amend the original Complaint and denied Defendant's motion to dismiss.  [ECF No. 19]. The Amended Complaint identified the defective knee replacement part as the unicondylar poly insert ("insert"), provided serial numbers for said part, and claimed that this defective part had failed and "caused an anterior translation of the plastic prosthesis."  [ECF No. 20 ¶¶ 9, 11].

On January 30, 2020, Defendant filed a motion to dismiss the Amended Complaint for failure to adequately plead claims pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure.  [ECF No. 25].  Plaintiff filed an opposition.  [ECF No. 27].  For the following reasons, the motion to dismiss is GRANTED IN PART and DENIED IN PART.

## I.  STANDARD OF REVIEW

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In considering a motion to dismiss for failure to state a claim, the

Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

"Manufacturers in Connecticut are strictly liable for defective products under § 402A of the Restatement (Second) of Torts." *McConologue v. Smith &*

*Nephew, Inc.*, 8 F. Supp. 3d 93, 99 (D. Conn. 2014). "A product may be defective due to a flaw in the manufacturing process, a design defect, or because of inadequate warnings or instructions." *Id.* "To recover under the doctrine of strict liability in tort, a 'plaintiff must prove that: (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition." *Id.* (quoting *Metro. Prop. & Cas. Ins. Co. v. Deere & Co.*, 302 Conn. 123, 131 (2011)).

## II. ALLEGATIONS

In reviewing a motion to dismiss, the Court considers the allegations of the complaint to be true. *Hayden*, 594 F.3d at 161.

Plaintiff is a Connecticut resident who underwent left knee replacement surgery at Middlesex Hospital on November 16, 2017. [ECF. No. 20 ¶¶ 1, 7]. Plaintiff was surgically implanted with a UNI Tibinrt, a UNI Tibial Base, and a UNI Oxinium Femoral Component, all of which were designed, manufactured, and marketed by Defendant. *Id.* ¶ 9.

Less than two months after the surgery, Plaintiff underwent an X-ray for left knee pain and discomfort. *Id.* ¶ 10. Testing and examination of the knee revealed a malfunction of the insert, which caused the knee replacement to shift.

*Id.* ¶¶ 10-11.  "[S]pecifically the unicondylar poly insert had failed causing an anterior translation of the plastic prosthesis."  *Id.* ¶ 11.

On January 10, 2018, Plaintiff underwent surgery to remove and replace the faulty components, specifically the insert.  *Id.* ¶ 12.  As a result of the failed implant components, Plaintiff suffered significant mental and physical anguish.  *Id.* ¶ 14.  Plaintiff is likely to undergo multiple knee replacement surgeries in the future because of the defective parts made by Defendant.  *Id.* ¶ 14.

### III.  DISCUSSION

In Counts One through Five, Plaintiff alleges that Defendant is strictly liable for manufacturing defects, design defects, nonconformance with representations, and failure to warn, and is generally liable for negligence.  *Id.* ¶¶ 19-45.

Defendant argues that Plaintiff's complaint should be dismissed for failure to plead his claims with the specificity required by Federal Rule of Procedure 8(a), and because Plaintiff has failed to plausibly state a claim for which relief can be granted under Rule 12(b)(6).  The Court will address each cause of action in turn.

#### A.    Count 1: Manufacturing Defect

Defendant argues that Plaintiff has inadequately pled his cause of action under Count One for failure to specify how the insert was defectively manufactured, citing *Philadelphia Indemnity Ins. Co. v. Lennox Industries, Inc.*, No. 3:18-cv-00218 (CSH), 2019 WL 1258918, at *4 (D. Conn. Mar. 18, 2019).  The court in *Lennox* held that for a Plaintiff to properly file a Complaint regarding a

manufacturing defect, he must provide the Court with adequate information as to how the part was defective, which, Defendant argues, Plaintiff did not do here.

Plaintiff counters that he has met his pleading burden by identifying the insert as the defective part of the knee replacement product, providing its exact batch and serial number, and explained how it failed, the "anterior translation," which is sufficient to bolster his claim that a failure in the insert caused the knee replacement to dislocate. Plaintiff argues that under the deferential standard of review given to complaints under *Steel Co. v. Citizens for a Better Evn't*, 523 U.S. 83 (1998), he has sufficiently alleged the details of a manufacturing defect in his Amended Complaint and provided adequate notice to the Defendant.

The Court agrees with the Plaintiff for the following reasons. First, the *Lennox* court explained what would *not* satisfy the manufacturing defect pleading standard, in that case for an allegedly defective furnace blower motor. A complaint is defective if it "contains no facts indicating the specific component or mechanism that was defective, nor [if] it [has not] otherwise identified, even in abstract terms, a particular problem with the subject blower motor. 'Pointing to the entirety of the device in question, without more, is not sufficient to state a claim of [a] defect.'" *Lennox*, 2019 WL 1258918, at *4 (quoting *Karazin v. Wright Med. Tech., Inc.*, No. 3:17-cv-00823 (JBA), 2018 WL 4398250, at *4 (D. Conn. Sept. 14, 2018), *reconsideration denied*, 2018 WL 6067235 (D. Conn. Nov. 19, 2018)). Here, Plaintiff has alleged much more detail than simply pointing to the knee

6

replacement kit as a whole and alleging that it was somehow defective. Rather, he has alleged that it was the "unicondylar poly insert [that] failed causing an anterior translation of the plastic prosthesis," [ECF No. 20 ¶ 11], which was discovered during post-surgical "examination and testing." *Id.* Courts have held alleging a knee replacement manufacturing defect with this degree of specificity sufficient. *See Williamson v. Stryker Corp.*, No. 12 Civ. 7083 (CM), 2013 U.S. Dist. LEXIS 104445, at *12-13 (S.D.N.Y. July 23, 2013) (denying motion to dismiss knee replacement manufacturing defect claim when complaint alleged "implant was overstressed and that screws in the implant were bending, broken and/or otherwise malfunctioning."); *Houtz v. Encore Med. Corp.*, No. 4:14-cv-0536, 2014 U.S. Dist. LEXIS 170481, at *18 (M.D. Pa. Dec. 10, 2014) (denying motion to dismiss knee replacement manufacturing defect claim when complaint alleged knee replacement "tibial post and polyethylene[] was defective because it spontaneously failed, necessitating a new knee replacement."); *Thompson v. DePuy Orthopaedics, Inc.*, No. 1:13-cv-00602, 2014 U.S. Dist. LEXIS 85849, at *9 (S.D. Ohio June 24, 2014) (denying motion to dismiss knee replacement manufacturing defect claim when complaint alleged knee replacement because "the portion of the [knee replacement] product that failed [must] be identified and is so identified in the complaint."). As *Williamson* held, a court must not, at the motion to dismiss a manufacturing defect claim stage, "require the plaintiff to possess technical or scientific knowledge about the inner workings of the

product, which would contravene the notice pleading requirement of Federal Rule of Civil Procedure 8, even under the *Iqbal-Twombly* standard." 2013 U.S. Dist. LEXIS 104445, at *11 (citing *Ohuche v. Merck & Co.*, No. 11 Civ. 2385 (SAS), 2011 U.S. Dist. LEXIS 73904, at *8-9 (S.D.N.Y. July 7, 2011)).

Moreover, as stated in Defendant's cited *McConologue* case, ". . . district courts must keep in mind that much of the product-specific information about manufacturing needed to investigate such a claim fully is kept confidential by federal law." 8 F. Supp. 3d at 109. As other courts in this District have noted, "much of the critical information . . . is kept confidential as a matter of federal law" due to medical device regulations and "will, therefore, be unavailable to a plaintiff without discovery." *Simoneau v. Stryker Corp.*, No. 3:13-cv-01200 (JCH), 2014 WL 1289426, at *6 (D. Conn. 2014) (quoting *Bausch v. Stryker Corp.*, 630 F.3d 546, 560 (7th Cir. 2010)). While the standard annunciated in *Lennox* requires that a Plaintiff identify how a part is defective, the Court must keep in mind that certain information about the manufacturing process is kept secret from Plaintiff and may not be discoverable to him at this time.

Furthermore, the Court distinguishes Defendant's cited *McConologue* case from the case at bar. In the former, a mistake in the manufacturing process of an entire batch of hip replacements required Defendant to disclose the exact mistake in manufacturing under FDA regulations. Because of that, there was ample detail regarding Defendant's manufacturing process available to Plaintiff for inclusion

8

in the complaint.  In the case at bar, without confidential information about the manufacturing process provided to him by Defendant, the most notice Plaintiff can provide to Defendant about the defect is the unique serial number of his insert and information about how exactly it failed in Plaintiff's case.

Additionally, the Court held in *Karazin* that the pleading standards discussed in *McConologue* do not establish a "pleading floor" that Plaintiffs must surpass, but rather frame the Court's review of manufacturing defects on a case by case basis.  2018 WL 4398250, at *3.

The standards under Rule 8(a) do not require a full factual explanation of the claim, only a short and concise statement of plausible facts which place the Defendant on notice of the charges being brought against it.  Plaintiff's Amended Complaint contains allegations which place Defendant on notice of the exact insert in question and how it failed.  While Plaintiff's Amended Complaint would benefit from specific allegations of manufacturing defect, this information may not be discoverable to Plaintiff at this time, and the Court must not penalize him for it.

The Court finds that the Plaintiff has sufficiently alleged that the knee replacement insert implanted in his body was defective and meets the pleading standards set forth in *Iqbal* and *Twombly*.  Plaintiff has pleaded that (1) he received an insert manufactured by Smith & Nephew; (2) less than two months after his surgery, he underwent an X-ray for pain and discomfort associated with

his knee replacement; (3) his specific insert, which he has provided both a batch and serial number for, was examined by his doctor and determined to be the cause of the malfunction in that it caused improper "anterior translation"; (4) the plaintiff underwent surgery to have the knee replacement removed; and (5) will require more surgeries in the future.  [ECF No. 20 ¶¶ 9-14].  As a result, Plaintiff has met his burden and provided Defendants with sufficient notice about which parts were defective, and the Court must DENY the motion to dismiss Count One.

  B. <u>Count 2: Design Defect</u>

Defendant argues that Plaintiff has inadequately pled his cause of action under Count Two for failure to specify how the insert was defectively designed, citing *Moss v. Wyeth*, claiming that Plaintiff did not sufficiently allege a design defect claim under the "consumer expectations test" or the "risk-utility test." [ECF No. 26 at 7-8 (citing *Moss v. Wyeth,* 872 F. Supp. 2d 162, 166 (D. Conn. 2012))].

Plaintiff counters that he has sufficiently met the Rule 8(a) pleading requirements for Count Two by stating that the knee replacement was more dangerous than a reasonable consumer could have expected by failing in two months, or that Defendant could have reduced the risk to Plaintiff by using an alternative knee design.  The Court agrees with the Plaintiff and must DENY the motion to dismiss for the following reasons.

Defendant accurately cites the definition of design defect from *Moss v. Wyeth*, namely one "which is "otherwise properly manufactured but is nonetheless unreasonably dangerous because its attributes can cause an unexpected injury," [ECF No. 26 at 7 (quoting *Moss,* 872 F. Supp. 2d at 166)], but fails to properly address the "ordinary consumer expectations test." The ordinary consumer expectations test states that a design defect exists when it "failed to perform as safely as an ordinary consumer would expect when used in a reasonably foreseeable manner." *Moss*, 872 F. Supp. 2d at 166. A knee replacement is a surgery which is expected to last a patient an extended period of time, certainly longer than the two months in which it was implanted in Plaintiff's knee. To satisfy the pleading requirement for a design defect, Plaintiff simply needs to allege that his knee replacement failed to perform as safely as an ordinary consumer would expect, which he asserts through the two-month life span of the insert in his Complaint. This statement is supported by the testing and examination of Plaintiff's knee by doctors, which taken as true would support the idea that the insert failed to perform safely as an ordinary customer would expect.

While Defendant attempts to dismiss Plaintiff's case for failure to specify a design that would reduce the danger to him, Defendant's case cited in support does not require Plaintiff to do so. "[T]he Connecticut Supreme Court has consistently held that proof of a feasible alternative design (a euphemism for

11

avoidability) is not an essential element of a plaintiff's prima facie case for defective design." *Moss*, 872 F. Supp. 2d at 169 (citing *Potter v. Chicago Pneumatic Tool Co.*, 241 Conn. 199, 216-17 (1997)); *Potter*, 241 Conn. at 216-17 ("In our view, the feasible alternative design requirement imposes an undue burden on plaintiffs that might preclude otherwise valid claims from jury consideration."). Requiring Plaintiff to identify a specific alternative design places too great a burden on him to meet pleading requirements, and courts instead require that Plaintiffs establish the dangerous condition of the product as evidence of a design defect. "Connecticut courts have traditionally taken a liberal view to design defect claims. For example, courts have held that it is not necessary that the plaintiff in a strict tort action establish a specific defect as long as there is evidence of some unspecified dangerous condition." *Moss*, 872 F. Supp. 2d at 169 (citing *Potter,* 241 Conn. at 225) (internal citations omitted). This is as opposed to other jurisdictions "that take a narrower approach to design defect liability by requiring a plaintiff to prove the feasibility of an alternative design as part of her prima facie case." *Id.* at 170.

Defendant's other cited cases are not to the contrary. In *Karazin*, the Court dismissed a design defect claim when the plaintiff's hip replacement failed after ten years, and plaintiff only "[p]oint[ed] to the entirety of the device in question, without more, [which wa]s not sufficient to state a claim of design defect." 2018 WL 4398250, at *4. Here, Plaintiff has pointed to the "unicondylar poly insert"

12

which improperly "caused an anterior translation of the plastic prosthesis," [ECF No. 20 ¶ 11], as the improperly designed portion of the knee replacement device. In *Goldin v. Smith & Nephew, Inc.*, the court analyzed plaintiff's claim under New York, not Connecticut law, and found plaintiff's design defect claim wanting because plaintiff relied on the "bare fact of [a] voluntary recall" and "ask[ed] the Court to take judicial notice of the fact that 'most hip implants do not dislocate during revision surgery,'" rather than pointing to a specific area of mis-design. No. 12 Civ. 9217 (JPO), 2013 WL 1759575, at *4 (S.D.N.Y. Apr. 24, 2013). Finally, in *Bertini v. Smith & Nephew, Inc.*, the Eastern District of New York found plaintiff's design defect claim lacking when it only alleged "that the device did not perform as intended" and was the subject of a recall. No. 13 Civ. 0079 (BMC), 2013 U.S. Dist. LEXIS 171021, at *8 (E.D.N.Y. July 15, 2013). Here, Plaintiff has done more than the plaintiffs in Defendant's cited cases.

The Court finds that the Plaintiff has met his burden by alleging that the product was more dangerous than the average consumer would expect. This is supported by the allegation that the insert failed within two months of implantation and is corroborated by the fact that his doctor examined and tested the insert and found it to be defective. As a result, the motion to dismiss Count Two is DENIED.

13

### C.     Count 3: Defect due to Nonconformance with Representations

Defendant argues that Count Three of Plaintiff's Complaint should be dismissed for two reasons; first, a "defect due to nonconformance with representations" is not a recognized cause of action under Connecticut law, and second, if this count is akin to "misrepresentation," that Plaintiff has not met the required pleading standard, because he has failed to state who made the representations about the safety of the knee insert, what was said, and when and how these representations were made.  [ECF No. 26 at 9-13].  Plaintiff does not oppose Defendant's arguments as regards this Count.  *See generally* [ECF No. 27].  For the following reasons, the Court will GRANT the motion to dismiss Count Three.

The Court recognizes that "defect due to nonconformance with representations" is not a valid cause of action under Connecticut law, but as Defendant suggests, [ECF No. 26 at 10], Plaintiff appears to be alleging a claim for negligent misrepresentation.  Assuming without deciding that this is so, the Court analyzes this count on the merits.  It is feasible that Plaintiff is asserting a misrepresentation claim, and the facts stated in the claim might support it as such.

Courts require a heightened standard of pleading under Rule 9(b) for claims of misrepresentation.  *McCullough v. World Wrestling Entm't, Inc.,* 172 F. Supp. 3d 528, 561 (D. Conn. 2016).  Under this standard, Plaintiff must "(1) specify

14

the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang,* 355 F.3d 164, 170 (2d Cir. 2004) (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993)). Plaintiff alleges that the Defendant company made statements to Plaintiff and/or Plaintiff's physician that the knee implants were safe for surgery. However, Plaintiff's complaint is insufficient to meet the specificity standards of Rule 9(b), which require Plaintiff to identify the specific speaker, statements, time, and location in which those statements were made, which Plaintiff plainly has not done. Because Plaintiff fails to meet the burden for specificity in Count Three of his Complaint, the Court must GRANT Defendant's motion to dismiss.

### D. Count 4: Failure to Warn

Defendant argues that Count Four of Plaintiff's Complaint should be dismissed for failure to state which parts of the implant were defective, what warnings should have been provided, and how the warnings were inadequate. Plaintiff counters that his Complaint is adequately specific regarding Defendant's failure to warn. For the following reasons, the Court will GRANT the motion to dismiss.

First, Defendant is correct that "Plaintiff has failed to offer a single fact explaining what warning Smith & Nephew did provide, how it was inadequate or what the warning should have stated." [ECF No. 26 at 13]. Because of that,

15

**Plaintiff has failed to meet the pleading standard for failure to warn. Under the precedent cited by Defendant in *Philadelphia Insurance Indemnity Co. v. Lennox,* this is merely a conclusory allegation which cannot stand.  In *Lennox,* Plaintiff's brief only asserted that the blower motor he purchased from Defendants was "defective and unreasonably dangerous" without providing any allegations regarding the warnings that were provided*. Lennox,* 2019 WL 1258918, at \*3.  The Court found this wanting because "[a]bsent even basic factual support for this claim – for example, whether the blower mower was accompanied with any warnings or instructions at all and, if so, what they stated and why they were inadequate – Plaintiff's claim is nothing more than a conclusory assertion that the Court must disregard."  *Id.*  The same is true here.  Plaintiff does identify the unicondylar poly insert as the defective part and claims that he should have received warning that failure of the insert could cause failure of the entire knee replacement device, but he has failed to specify what warnings he did receive about the product and how they were deficient.**

**Plaintiff has failed to meet the pleading burden to satisfy *Iqbal* and *Twombly*, and as a result, the Court must GRANT the motion to dismiss Count Four.**

**E.     Count 5: Negligence**

**Defendant argues that Count Five of Plaintiff's Complaint is a conclusory summary of the previous counts and should be dismissed for failure to state a**

specific claim. Plaintiff counters generally that Count Five should survive the motion to dismiss because it asserts that Defendant negligently designed, manufactured, and marketed the insert, which they should have known was likely to fail and cause the knee replacement to dislocate. For the following reasons, the Court will GRANT the motion to dismiss.

Plaintiff insufficiently establishes the elements of a cause of action for his allegations in Count Five and fails to provide enough factual evidence to move the Count beyond the realm of possibility and into plausibility. "The elements of a negligence cause of action under Connecticut law are duty, breach of that duty, causation and actual injury." *Duverge v. United States*, No. 3:10-cv-1922 (JGM), 2017 WL 4927658, at *7 (D. Conn. Oct. 31, 2017). Under the pleading standard set forth in *Twombly*, Plaintiff must establish each element of negligence in a manner that is factually plausible. The Court finds that Plaintiff has not met this burden.

Plaintiff alleges that Defendant has a duty of care to Plaintiff in the design and manufacture of its products so that they will be safe for surgical use. Plaintiff further alleges that through the design and manufacturing of the insert, Defendant breached that duty, as the insert failed in less than two months after being surgically inserted into Plaintiff's body. But other than that lone fact, Plaintiff's complaint lacks any detail regarding Defendant's alleged negligence.

As Defendant argues, "[t]hese conclusory allegations without factual support do not suffice to state a claim for negligence." [ECF No. 26 at 15]. As the

Court in *Karazin* stated, "although the Court finds that Plaintiffs' strict liability manufacturing defect claim is pled with sufficient detail, those allegations include no factual support for an inference that negligence caused that manufacturing defect. In the absence of any specific factual allegations whatsoever as to the nature of Defendant's breach of its duty of care, Plaintiffs have not met their pleading burden on their negligence claims." 2018 WL 4398250, at *7; *see also In re Pamidronate Prods. Liab. Litig.*, 842 F. Supp. 2d 479, 485 (E.D.N.Y. 2012) ("[P]laintiffs' allegations of negligence based on the failure to exercise reasonable care in testing and manufacturing pamidronate fail because the Complaint merely makes a conclusory allegation of negligence, without any factual support for this cause of action."). The same applies here. As a result, Plaintiff has not sufficiently established his cause of action for negligence, and the Court must GRANT the motion to dismiss Count Five.

## IV.  CONCLUSION

For the foregoing reasons, the motion to dismiss the Amended Complaint, [ECF No. 25], is GRANTED IN PART and DENIED IN PART. Counts Three, Four and Five are dismissed with prejudice. The Parties are invited to discuss settlement and file a joint motion for a settlement conference on the docket should they consider such to be a productive use of their time.

**IT IS SO ORDERED**

_____/s/_____

**Vanessa L. Bryant
United States District Judge**

**Dated at Hartford, Connecticut: June 17, 2020.**